IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,855

In the Matter of DAVID PHILLIP LEON,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 10, 2021. Indefinite suspension.

*Kathleen J. Selzler Lippert,* Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Bruce A. Swenson*, of Derby, argued the cause, and *David Phillip Leon*, respondent, argued the cause pro se.

PER CURIAM:  This is an attorney discipline proceeding against David Phillip Leon, who was admitted to practice law in Kansas on April 23, 1993.

On January 31, 2020, the Disciplinary Administrator's office filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). This complaint related to alleged violations that arose from Leon's representation of three clients. On April 24, 2020, the Disciplinary Administrator's office filed an amended formal complaint, adding alleged violations of the KRPC arising from Leon's representation of a fourth client. The Disciplinary Administrator's office sent the respondent a copy of the formal complaint and the amended complaint by certified mail to the respondent's registration address. The respondent did not answer the first complaint and did not timely answer the amended formal complaint.

1

A panel of the Kansas Board for Discipline of Attorneys held a hearing on September 10, 2020. The respondent appeared with counsel, Bruce Swenson. The parties presented a 26-page joint stipulation. In the stipulation, the respondent admitted to many facts.

As the hearing began, the Disciplinary Administrator's office announced it was not pursuing allegations relating to a violation of KRPC 3.3 (2021 Kan. S. Ct. R. 385) (candor to the tribunal). The hearing panel thus dismissed that allegation.

At the end of the hearing, the panel determined the respondent violated KRPC 1.1 (2021 Kan. S. Ct. R. 321) (competence), KRPC 1.3 (2021 Kan. S. Ct. R. 325) (diligence), KRPC 1.5 (2021 Kan. S. Ct. R. 327) (fees), KRPC 1.15 (2021 Kan. S. Ct. R. 366) (safekeeping property), KRPC 3.2 (2021 Kan. S. Ct. R. 384) (expediting litigation), KRPC 8.1 (2021 Kan. S. Ct. R. 424) (cooperation), KRPC 8.4 (2021 Kan. S. Ct. R. 427) (professional misconduct), former Supreme Court Rule 207 (2020 Kan. S. Ct. R. 246) (cooperation), and former Supreme Court Rule 211 (2020 Kan. S. Ct. R. 254) (answer).

But the panel concluded the Disciplinary Administrator's office had not presented clear and convincing evidence to prove respondent violated KRPC 1.4 (2021 Kan. S. Ct. R. 326) (communication), KRPC 1.6 (2021 Kan. S. Ct. R. 330) (confidentiality), and KRPC 1.16 (2021 Kan. S. Ct. R. 372) (termination of representation).

The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition, in a final hearing report, the relevant portions of which are set forth below. The respondent filed a statement "taking exception to the findings of fact or conclusion[s] of law in the Final Hearing Report." But respondent filed no brief, even though Supreme Court Rule 228(h) (2021 Kan. S. Ct. R. 281) requires a party to do so if the party filed exceptions to the final hearing report.

2

. . . .

"17.    Based on the joint stipulation and the evidence presented at the hearing on the formal complaint, the hearing panel finds the following facts, by clear and convincing evidence:

"DA13055

"18.    On November 2, 2019, C.F. hired the respondent to represent her in a pending criminal case in Sedgwick County, Kansas. That same day, C.F. completed and signed an 'information sheet' as requested by the respondent's office. The information sheet included, in bold lettering, that the fee was nonrefundable regardless of the amount of time spent on the case or the outcome of the case. The respondent also stated that there could be an additional fee if a trial is required. C.F. paid the respondent $500 and agreed to make two additional payments of $500 to the respondent prior to trial.

"19.    The respondent did not deposit the unearned fees into a trust account. The respondent used the $500 to pay his mother's bills.

"20.    In March, 2018, C.F. filed a complaint with the disciplinary administrator's office regarding the respondent. In her complaint, C.F. alleged that the respondent failed to inform her of a court date and, as a result, she was arrested and jailed for seven days. C.F. stated that after she was released from jail, she confronted the respondent at his office about why he did not inform her of the court appearance. The respondent told C.F. that he provided her with notice of the hearing by letter. C.F. asked the respondent for a copy of the letter. The respondent was unable to provide C.F. with a

3

copy of the letter. In the complaint, C.F. also complained that the respondent's strategy was 'to postpone trial for as long as possible before requesting a bench trial.'

"21.    On March 15, 2018, the disciplinary administrator's office directed the respondent to provide a written response to the initial complaint filed by C.F. within 20 days. The respondent failed to provide a written response as directed.

"22.    The respondent provided two written responses to C.F.'s complaint, one on April 27, 2018, and a second one on September 28, 2018. In the respondent's second response, the respondent claimed that his use of the 'information sheet' was in error. Specifically, the respondent stated that he 'discovered that [his] assistant had utilized an older form for [*sic*] which had been previously discontinued from usage in [his] office.'. The respondent went on to say:

'. . . I advised her that pursuant to the rules governing representation of client(s), we are not permitted to use the outdated form, and to not to [*sic*] ever use it again. Therefore, based upon this discussion and subsequent admonishment, all usage, either intended or unintended of the form containing the specific language referred to has been stricken and removed from any potential usage.'

"23.    Paula Langworthy, a volunteer attorney investigator, investigated this case. Ms. Langworthy requested that the respondent schedule a time to meet with her regarding the complaint. The respondent did not initially agree to do so. It was not until Ms. Langworthy repeatedly directed the respondent to do so before he finally agreed to meet with Ms. Langworthy regarding C.F.'s complaint.

"24.    At some point in time, the respondent provided Ms. Langworthy with a copy of a letter notifying C.F. of the February 14, 2018, court appearance.

4

"25. On June 28, 2018, Ms. Langworthy met with the respondent. When they met, Ms. Langworthy reviewed the respondent's client file regarding C.F. Ms. Langworthy was unable to locate the letter that the respondent previously provided to Ms. Langworthy and described in his attorney response dated April 27, 2018. The respondent blamed his staff for the missing document, the respondent claimed that a second file 'probably contained those documents' and that the second file was probably in one of his other two vehicles that were in different mechanical repair shops or at his home office, and that he did not just create the letter that had been previously provided. When Ms. Langworthy questioned the respondent about the potential breach of confidentiality of client files left in vehicles in mechanical repair shops, the respondent stated that the second file was probably not in either of his other vehicles. Ms. Langworthy provided the respondent with additional time to provide the second file. The respondent did not provide Ms. Langworthy with a second file.

"26. Later, William Delaney, special investigator with the disciplinary administrator's office was assigned to conduct additional investigation. The respondent told Mr. Delaney that he believed that C.F., her mother, or her boyfriend stole his (second) file. The respondent also explained to Mr. Delaney that he did not have a system to track bills and he relied on a verbal agreement and a handshake.

"DA13203

"27. T.F. retained the respondent to represent him in a criminal matter. T.F. paid the respondent $2,500 for the representation. The respondent did not deposit the $2,500 unearned fees into an attorney trust account.

"28. On October 9, 2018, T.F. filed a complaint with the disciplinary administrator's office. On October 10, 2018, the disciplinary administrator's [office] wrote to the respondent, directing him to provide a written response to the complaint within 20 days.

"29 Dennis Phelps, a volunteer attorney investigator, was assigned to investigate this complaint. On October 22, 2018, Mr. Phelps wrote to the respondent

5

directing that the respondent provide a written response to the initial complaint within 60 days. The respondent failed to provide a written response as directed.

"30.     In a letter received on January 22, 2019, T.F. told the disciplinary administrator's office that the respondent came to see him and asked T.F. to send the disciplinary administrator's office a letter that this was just a misunderstanding. T.F. stated that he told the respondent he would not do that until the respondent 'does the things he assured [him] he would do and get's [*sic*] [him] out.' Then, in a letter dated January 2, 2019, postmarked February 12, 2019, and received by the disciplinary administrator's office on February 14, 2019, T.F. wrote:  'I have been in contact with you regarding my attorney, David Leon. I wish to take back my complaint he has offered to take care of another case for me. He is making it right on his end.'

"31.     Mr. Delaney was also assigned to conduct some additional investigation into T.F.'s complaint. On September 24, 2019, Mr. Delaney wrote to the respondent reminding him of the previous deadlines to provide a written response to the initial complaint. Mr. Delaney directed the respondent to provide a written response by October 11, 2019. The respondent prepared his response on October 9, 2019, however, the respondent misdirected the response. The respondent inadvertently sent the response to the investigator of DA13300 and DA13366 rather than the disciplinary administrator's office. Thereafter, on November 7, 2019, the disciplinary administrator's office received the respondent's written response to the complaint filed by T.F., dated October 9, 2019.

"DA13300

"32.     The court appointed a public defender to represent G.D. in a criminal case. On July 22, 2016, the public defender requested that the court modify a bond condition to allow G.D. and his wife to have contact. On July 28, 2016, the court denied the public defender's request.

"33.     Thereafter, in October, 2016, G.D. retained the respondent to replace the public defender. G.D. paid the respondent an initial fee of more than $2,000. Additionally, during the representation, G.D. provided the respondent with additional cash payments. G.D. did not receive receipts for his cash payments. G.D. believes he paid

6

the respondent roughly $3,500. On October 26, 2016, the respondent entered his appearance on behalf of G.D.

"34.     The respondent did not deposit the unearned fees into an attorney trust account. Also, the respondent did not maintain any records to establish the amount of fees paid by G.D.

"35.     G.D. wanted the respondent to contact a witness who observed the incident. However, during the 15-month period of representation, the respondent did not contact the eyewitness.

"36.     G.D. wanted the respondent to seek to have a bond condition changed so that G.D. could have contact with his wife. The respondent took no action to have the bond condition changed during the 15 months that the respondent represented G.D.

"37.     According to G.D., the respondent told him to waive his right to a jury trial. G.D. did not understand the full implication of waiving his right to a jury trial. He did not want a court trial as he thought that he had witnesses that would appeal to a jury. However, on February 27, 2017, acting on the respondent's advice, G.D. waived his right to a jury trial.

"38.     G.D. stated that the respondent's defense was to obtain repeated continuances. The respondent confirmed that his strategy was to seek one continuance after another in the hopes that the district attorney would reduce the charges or dismiss the case. The respondent sought and obtained 12 continuances of trial settings, spanning 15 months.

"39.     G.D. hired replacement counsel. On February 5, 2018, the respondent withdrew from his representation of G.D. and replacement counsel entered his appearance.

"40.     Replacement counsel filed a motion to modify G.D.'s bond conditions. On March 9, 2019, the court granted the motion to modify the bond conditions, stating that he never intended to have the bond condition last for two years.

7

"41.     Replacement counsel also filed a motion to rescind the jury trial waiver. The court denied the motion, finding among other things, that G.D. had the advice of counsel when he waived his right to a jury trial.

"42.     On April 8, 2019, G.D. lodged a complaint with the disciplinary administrator's office against the respondent. Two days later, the disciplinary administrator's office sent the respondent a letter directing the respondent to provide a written response to the initial complaint within 20 days. The respondent did not provide a written response as directed.

"43.     R. Todd King, a volunteer attorney investigator was assigned to investigate G.D.'s complaint. Mr. King repeatedly requested that the respondent meet with him regarding G.D.'s complaint. Each time, the respondent put Mr. King off, explaining that the respondent was too busy. Mr. King was unsuccessful in getting the respondent to schedule an appointment for a meeting. The respondent, however, did speak with Mr. King by telephone.

"44.     Finally, on September 2, 2019, the respondent provided a written response to the initial complaint filed by G.D.

"DA13366

"45.     T.C. retained the respondent to represent her boyfriend, W.A., who was in custody on a 2009 conviction. T.C. paid the respondent $3,300. The respondent did not deposit the unearned fees into an attorney trust account.

"46.     On December 11, 2018, the respondent entered into a fee agreement with T.C., on behalf of W.A. The fee agreement included the following statement, 'no portion of this fixed minimum fee shall ever be refunded to client.' (In the respondent's written response to C.F.'s complaint, dated September 28, 2018, the respondent acknowledged that he could not charge nonrefundable fees and indicated that he had taken steps to ensure that the language would not again be used in his fee agreements. Yet, six weeks

8

later, on December 11, 2018, the respondent again included language that a fee was nonrefundable. (*See* ¶ 22, above.)

"47. During the eight months the respondent represented W.A., the respondent spent only 11 hours reviewing materials.

"48. In July, 2019, T.C. informed the respondent that they were terminating the respondent's representation and they wanted the file returned so they could hire a new attorney. During that conversation, the respondent offered to refund $1,500 of the fees collected. Thereafter, T.C. was unable to reach the respondent to make arrangements to receive the $1,500 refund.

"49. On September 3, 2019, T.C. filed a complaint against the respondent with the disciplinary administrator's office. T.C. complained that after the respondent received the attorney fees, the respondent did not keep her informed regarding the status of the representation. Additionally, T.C. questioned whether the respondent earned the attorney fees.

"50. On September 6, 2019, the disciplinary administrator's office wrote to the respondent directing him to provide a written response to the complaint within 20 days. The respondent did not provide a written response within 20 days. On November 5, 2019, the disciplinary administrator's office again directed the respondent to provide a written response to the initial complaint filed by T.C., giving the respondent 10 additional days to do so. The respondent did not provide a written response within the extended deadline.

"51. By Thanksgiving, 2019, the respondent refunded the entire amount paid by T.C. And, on December 5, 2019, the respondent finally provided a written response to the initial complaint filed by T.C.

"52. Mr. King was also assigned to investigate T.C.'s complaint. Again, Mr. King requested that the respondent schedule a time to meet to discuss the complaint. Again, the respondent did not do so. The respondent spoke by telephone with Mr. King.

9

"Attorneys Fees and Bank Accounts

"53.     On October 26, 2000, the respondent opened an operating account at the Community Bank of Wichita. During the life of the account, it was in overdraft status the majority of the time. The respondent received daily notices due to the overdraft status. On August 14, 2015, the bank made the decision to close the account due to the large overdrafts and the lack of deposits. At that time, the account was overdrawn $3,607.60. Later, the bank received $2,636.10 toward the overdraft amount.

"54.     On June 29, 2004, respondent opened an IOLTA account with Community Bank of Wichita. The respondent deposited $990 into the account that day. Even though the respondent had the IOLTA account, he did not use it.

"55.     The balance in the IOLTA account remained $990 until the respondent withdrew $302 on December 23, 2009. Because there were no deposits or withdrawals for a year, the bank classified the account as dormant. The bank charges a monthly dormant fee. The bank and the respondent did not take note that the IOLTA account was being assessed a dormant fee. IOLTA accounts are not to be charged any service charges.

"56.     On the respondent's annual attorney registration form from recent years, the respondent indicated that he had an IOLTA account, that he is familiar with KRPC 1.15, and that he is in compliance with KRPC 1.15.

"57.     During the disciplinary investigations, the investigators questioned the respondent regarding his attorney trust account. The respondent informed Mr. Delaney and Mr. King that his IOLTA account is with the Community Bank of Wichita.

"58.     Mr. Delaney requested that the respondent provide bank account and trust account records. The respondent did not provide Mr. Delaney with the requested documents. Mr. Delaney, however, was able to obtain some records via subpoena.

"59.     On May 29, 2019, in response to a suggestion made by Mr. Delaney, the respondent checked on the balance in his trust account and deposited $100. At that time, the respondent and the bank discovered that the IOLTA account had been charged the

automatic dormant fees. That day, the bank refunded the dormant fees and deposited the refund into the IOLTA account.

"60.     The respondent told Mr. King that while [he] has had a trust account, he rarely used it. The respondent also told Mr. King that he does not know how to handle the accounts. The respondent testified that prior to his father's death, his father handled the accounts.

"61.     The respondent told Mr. Delaney and Mr. King that he also has an account at Mid-America Credit Union. When asked whether the Mid-America Credit Union account is a trust account or an operating account, the respondent stated, 'a little bit of both.' The respondent admitted to commingling his funds with his client funds in the operating account. The respondent acknowledged that he needed help with the 'banking and account stuff.'

"62.     The respondent told Mr. Delaney that he also has an account with Intrust Bank. The respondent's Intrust Bank account was opened on September 18, 2015, and is used as a personal account and an operating account.

"63.     In 2020, the respondent's only open account with Community Bank of Wichita, was the IOLTA account. In addition to the IOLTA account, the respondent also had at least one business loan with the Community Bank of Wichita. On January 31, 2020, the respondent visited Community Bank of Wichita, intending to make a payment of $1,000 on a business loan. However, the respondent's instructions to the tellers were to put the funds into his account. As a result, the bank deposited the $1,000 into the IOLTA account. The next day, the respondent's intentions were clarified and the $1,000 was removed from the trust account and applied to the loan.

"64.     Two weeks before the hearing on the formal complaint, on August 27, 2020, the respondent deposited $1,260 in cash into the IOLTA account. On August 28, 2020, he utilized a service called Square. Square deposited a penny into the IOLTA account and withdrew a penny from the IOLTA account to verify the account. On September 1, 2020, the respondent deposited $130 cash into the IOLTA account.

11

"65.     At the hearing on this matter, the respondent testified that during the time period involved in the representation of the four complainants, he routinely deposited unearned attorney fees into his operating account. The respondent testified that on occasion, if a client paid him in cash, the respondent pocketed the cash without depositing it into any account. Finally, the respondent testified that he previously believed that he was in compliance with KRPC 1.15 because he had a trust account.

"*Pleadings*

"66.     On January 24, 2020, the deputy disciplinary administrator filed a formal complaint in DA13055, DA13203, and DA13300. That same day, the deputy disciplinary administrator sent the respondent a copy of the formal complaint by certified mail to the respondent's registration address. The respondent failed to file an answer to the formal complaint as required by the Rules Relating to Discipline of Attorneys.

"67.     On April 24, 2020, the deputy disciplinary administrator filed an amended formal complaint, adding a four[th] complaint, DA13366. The deputy disciplinary administrator sent the respondent a copy of the amended formal complaint by certified mail to the respondent's registration address. The respondent failed to file an answer to the formal complaint as required by the Rules Relating to Discipline of Attorneys.

"*Conclusions of Law*

"68.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.5 (fees), KRPC 1.15 (safekeeping property), KRPC 3.2 (expediting litigation), KRPC 8.1 (cooperation), KRPC 8.4 (professional misconduct), Supreme Court Rule 207 (cooperation), and Supreme Court Rule 211 (answer), as detailed below.

"69.     At the outset of the hearing, the deputy disciplinary administrator indicated that she would not be pursuing the allegations found at paragraphs 87(a), 87(b), 88, 88(a), and 88(b). The allegations contained in those paragraphs relate to the deputy disciplinary administrator's allegation that the respondent violated KRPC 3.3 (candor to

12

the tribunal). Because the deputy disciplinary administrator did not pursue those allegations, the hearing panel dismisses the allegation that the respondent violated KRPC 3.3 (candor to the tribunal).

"70.     The deputy disciplinary administrator also included allegations that the respondent violated KRPC 1.4 (communication), KRPC 1.6 (confidentiality), and KRPC 1.16 (termination of representation) While the formal complaint included a reference to these violations and some factual allegations to consider these violations, the stipulation did not include facts to establish these violations and the deputy disciplinary administrator presented no evidence to establish these violations. Accordingly, the hearing panel concludes that clear and convincing evidence was not provided to establish that the respondent violated KRPC 1.4 (communication), KRPC 1.6 (confidentiality), KRPC 1.16 (termination of representation), and KRPC 3.3 (candor to the tribunal).

"KRPC 1.1

"71.     Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' *Id*. Competent representation is not limited to just knowing how to handle a particular case. According to the language of the rule, it also requires thoroughness and preparation. In this case, the respondent did not provide competent representation to G.D. because rather than properly preparing for trial and interviewing an eyewitness, the respondent requested and received 12 continuances, over a 15[-]month period of time. The hearing panel concludes that because the respondent did not properly prepare for the representation, the respondent failed to provide competent representation to G.D., in violation of KRPC 1.1.

"KRPC 1.3

"72.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent G.D. G.D. requested that the respondent interview an eyewitness to the criminal case. The respondent did not do so. Further, the respondent requested and received 12 continuances over a period of 15 months. Thus, the hearing panel concludes

13

that the respondent did not provide G.D. with diligent representation and, therefore, violated KRPC 1.3.

## "KRPC 1.5

"73.     KRPC 1.5 provides that '[a] lawyer's fee shall be reasonable.' The respondent's fee agreement with C.F. and the respondent's fee agreement with T.C., on behalf of W.A., included language that the fee for future services was nonrefundable. Nonrefundable fees are *per se* unreasonable. *See In re Scimeca*, 265 Kan. 742, 962 P.2d 1080 (1998); KRPC 1.5 Comment 2; KRPC 1.16(d). Because the respondent charged a nonrefundable fee for future services, the hearing panel concludes that the fee was unreasonable and in violation of KRPC 1.5(a).

## "KRPC 1.15

"74.     Lawyers must properly safeguard the property of their clients and third persons. The respondent violated KRPC 1.15 in several ways.

"75.      KRPC 1.15(a) provides:

> 'A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

Properly safeguarding the property of others necessarily requires lawyers to deposit unearned fees into an attorney trust account. The respondent systematically failed to utilize his attorney trust account. The respondent failed to deposit the fees paid by all four complainants into his attorney trust account. Accordingly, the hearing panel concludes

14

that the respondent repeatedly violated KRPC 1.15(a) by failing to deposit unearned fees, thus, the property of others, into his attorney trust account.

"76.    Properly safeguarding the property of clients also necessarily requires that lawyers keep client money separate from the lawyer's own money. *See* KRPC 1.15(a) and KRPC 1.15(d)(1). Because the respondent deposited unearned fees into his operating accounts with the respondent's own money, the respondent commingled client funds. The hearing panel concludes that the respondent violated KRPC 1.15(a) and KRPC 1.15(d)(1) by commingling client funds with his funds.

"77.    Attorneys must maintain 'complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them.' KRPC 1.15(d)(2)(iii). The respondent maintained no records to track the amount of attorney fees paid by his clients. As such, the hearing panel concludes that the respondent violated KRPC 1.15(d)(2)(iii).

"78.    Under KRPC 1.15(d)(2)(v), attorneys must maintain attorney trust account records and produce the records upon request by the disciplinary administrator. The respondent failed to produce his attorney trust account records as requested by the disciplinary investigator, investigating the complaint on behalf of the disciplinary administrator. Therefore, the hearing panel concludes that the respondent violated KRPC 1.15(d)(2)(v).

"KRPC 3.2

"79.    KRPC 3.2 requires an attorney to expedite litigation. In representing C.F., T.F., and G.D., the respondent failed to expedite litigation by repeatedly requesting continuances. Specifically, in representing G.D., the respondent requested and received 12 continuances, spanning 15 months. Because the respondent repeatedly failed to expedite litigation, the hearing panel concludes that the respondent violated KRPC 3.2.

15

"KRPC 8.4(d)

"80.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he employed a strategy of delay in his representation of C.F., T.F., and G.D. The respondent acknowledged that he repeatedly requested and received continuances in hopes that the prosecutor would eventually reduce the charges or dismiss the cases. The old legal maxim is applicable here; to delay justice is to deny justice. The hearing panel concludes that the respondent's strategy of delay amounts to professional misconduct that was prejudicial to the administration of justice, in violation of KRPC 8.4(d).

"KRPC 8.1 and Supreme Court Rule 207(b)

"81.     Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Supreme Court Rule 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(b).

> 'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Rule 207(b).

The respondent violated KRPC 8.1 and Rule 207(b) in all four cases. The respondent's lack of cooperation took a number of different forms.

"82.     First, the respondent did not provide the written responses to the initial complaints as directed. The respondent's initial written response to C.F.'s complaint was three weeks late. The respondent's written response to T.F.'s complaint was received nearly a year after it was originally due. The respondent's written response to G.D.'s

16

complaint was four months late. The respondent's written response to T.C.'s complaint was two months late.

"83. Second, the respondent attempted to interfere with the disciplinary investigation of T.F.'s complaint. At a time when the respondent should have already provided his written response to T.F.'s complaint but had not, the respondent went to see T.F. and asked him to write to the disciplinary administrator's office and say that this was just a misunderstanding and to 'take back' his complaint.

"84. Third, during the disciplinary investigations, Mr. Delaney directed the respondent to provide him with a copy of his trust account records. The respondent did not provide Mr. Delaney with any trust account records.

"85. Finally, Mr. King repeatedly requested that the respondent meet with him during the investigations of G.D.'s complaint and T.C.'s complaint. The respondent did not do so. Accordingly, the hearing panel concludes that the respondent failed to cooperate and aid in the investigation as required by Supreme Court Rule 207(b).

"86. The hearing panel concludes that the respondent repeatedly violated KRPC 8.1(b) and Supreme Court Rule 207(b).

"Supreme Court Rule 211(b)

"87. The Kansas Supreme Court Rules require an attorney to file an answer to a formal complaint. Supreme Court Rule 211(b) provides the requirements:

'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

The respondent violated Rule 211(b) by failing to file a timely written answer to the formal complaint. Additionally, the respondent violated Rule 211(b) when he failed to

17

file an answer to the amended formal complaint as required by the rules. Accordingly, the hearing panel concludes that the respondent violated Rule 211(b).

"*American Bar Association
Standards for Imposing Lawyer Sanctions*

"88.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"89.    *Duty Violated*. The respondent violated his duty to his clients to provide competent and diligent representation. The respondent violated his duty to his clients and to the public to properly safeguard property. The respondent violated his duty to the legal profession and the legal system to refrain from engaging in conduct that is prejudicial to the administration of justice. Finally, the respondent violated his duty to the legal profession to cooperate in disciplinary cases.

"90.    *Mental State*. The respondent knowingly violated his duties.

"91.    *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to the administration of justice and potential and actual injury to his clients.

"Aggravating and Mitigating Factors

"92.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a.    *Prior Disciplinary Offenses*. In 2012, the respondent participated in the attorney diversion program. In the diversion agreement, the

18

respondent admitted that he violated KRPC 1.1 (competence) in representing a client in a federal criminal matter.

b. *A Pattern of Misconduct*. The respondent engaged in patterns of misconduct. The respondent committed similar misconduct in all four cases. In the four cases before the hearing panel, the respondent failed to deposit unearned fees into an attorney trust account, the respondent commingled his fund with his clients['] funds, the respondent failed to keep time records, the respondent failed to keep records of payments made by clients, and the respondent failed to keep trust account records. It is important to note that in the 2012 diversion case, the respondent also failed to keep time records. The respondent repeatedly engaged in delay tactics in three of the four cases. The respondent also failed to cooperate as required in all four cases. The hearing panel concludes that the respondent engaged in patterns of misconduct.

c. *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.5 (fees), KRPC 1.15 (safekeeping property), KRPC 3.2 (expediting litigation), KRPC 8.1 (cooperation), KRPC 8.4 (professional misconduct), Supreme Court Rule 207 (cooperation), and Supreme Court Rule 211 (answer). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

d. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The respondent did not cooperate in the disciplinary process. He failed to timely provide written responses to the complaints in this case. He failed to provide the trust account records requested by Mr. Delaney. He refused to meet with Mr. King in the investigations of the complaints filed by G.D. and T.C. Finally, he contacted T.F. and asked T.F. to inform the disciplinary administrator's office that this was just a misunderstanding in an attempt to circumvent the disciplinary process. The respondent's conduct amounts to bad faith obstruction of the

19

disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

e. *Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process*. During the disciplinary investigation of T.F.'s complaint, the respondent went to see T.F. and asked T.F. to send the disciplinary administrator's office a letter that this was just a misunderstanding. T.F. told the respondent he would not do that until the respondent 'does the things he assured [him] he would do and get's [*sic*] [him] out.' Then, in a letter dated January 2, 2019, postmarked February 12, 2019, and received by the disciplinary administrator's office on February 14, 2019, T.F. wrote: 'I have been in contact with you regarding my attorney, David Leon. I wish to take back my complaint he has offered to take care of another case for me. He is making it right on his end.' While counsel for the respondent argued this evidence in mitigation, the hearing panel concludes that this is evidence in aggravation. The respondent appears to have attempted to disrupt the disciplinary investigation by asking T.F. to write to the disciplinary administrator's office, tell them that it was just a misunderstanding, and ask that the complaint be dropped. This conduct is part of the violation of KRPC 8.1(b) and Rule 207(b) and is also evidence that the respondent engaged in a deceptive practice during the disciplinary process.

f. *Vulnerability of Victim*. C.F., T.F., G.D., and W.A. were vulnerable to the respondent's misconduct.

g. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1993. At the time of the misconduct, the respondent had been practicing law for more than 22 years.

"93. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its

20

recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

      a.     *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The respondent's brother died in 2014, the respondent's father died in 2015, and the respondent's mother suffers financial difficulties. The death of his brother, the death of his father, and the ongoing financial difficulties of the respondent's mother created additional pressure on the respondent which may have contributed to the respondent's misconduct. Additionally, the deputy disciplinary administrator presented evidence of the respondent's significant gambling activities. It is unclear whether the respondent's gambling activities contributed to the misconduct in this case.

      b.     *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct.* The respondent completed the representation of C.F. The respondent completed the representation of T.F. After T.C. filed a complaint against the respondent, the respondent returned the $3,300 attorney fee to T.C.

      c.     *The Present and Past Attitude of the Attorney as Shown by His Cooperation During the Hearing and His Full and Free Acknowledgment of the Transgressions.* While the respondent did not adequately cooperate during the disciplinary investigations, the respondent did stipulate to many facts in his untimely answer and in the written stipulation filed the day before the hearing on the formal complaint.

      d.     *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent is an active member of the bar of Wichita, Kansas. The respondent enjoys

the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

"94.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.12    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.'

'4.41    Disbarment is generally appropriate when:

(a)      a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b)      a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c)      a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.'

'4.42    Suspension is generally appropriate when:

(a)      a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)      a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

'7.2     Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

22

"*Discussion*

"95.     The respondent engaged in serious misconduct in this case. Even though the respondent has been practicing law for 27 years, the respondent lacks the ability to properly utilize an attorney trust account. The respondent failed to cooperate in the disciplinary investigations, refusing to schedule appointments to meet with Mr. King and providing written responses to complaints as much as one year late. Finally, the respondent's strategy of systematically requesting continuances in the hope that the prosecutors would eventually reduce criminal charges or dismiss criminal cases was prejudicial to the administration of justice. Serious misconduct necessitates serious discipline.

"*Recommendation of the Parties*

"96.     The disciplinary administrator recommended that the respondent be disbarred.

"97.     The respondent recommended that he be allowed to continue to practice law subject to his proposed plan of probation.

"*Consideration of Probation*

"98.     When a respondent requests probation, the hearing panel is required to consider Supreme Court Rule 211(g)(3), which provides:

'(3)     The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)     the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

23

(ii)     the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii)     the misconduct can be corrected by probation; and

(iv)     placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"99.     The hearing panel is unable to recommend that the respondent be placed on probation because each of the conditions outlined in Supreme Court Rule 211 has not been met.

"100.     The respondent developed a workable plan of probation. However, the proposed plan is neither substantial nor detailed. And, while the respondent provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel at least 14 days prior to the hearing on the formal complaint, the respondent failed to put the proposed plan of probation into effect prior to the hearing on the formal complaint by complying with each of the terms and conditions of the probation plan. The misconduct, in this case, can be corrected by probation. However, placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas.

"*Recommendation of the Hearing Parties*

"101.     Based upon the parties' stipulations, the findings of fact, the conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law be indefinitely suspended.

"102.     Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

24

In a disciplinary proceeding, we consider the evidence, the panel's findings, and the parties' arguments and determine whether KRPC violations exist and, if they do, the appropriate discipline. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 226(a)(1)(A) (2021 Kan. S. Ct. R. 276). "'Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.'"'" *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020).

The Disciplinary Administrator's office gave respondent adequate notice of the amended complaint, to which he filed an untimely answer admitting many allegations. The respondent filed a statement "taking exception to the findings of fact or conclusion[s] of law in the Final Hearing Report." Supreme Court Rule 228(h) requires a party filing an exception to the final hearing report to follow up by filing a brief. But respondent did not do so. By operation of the rule, his failure to file the brief means he is "deemed to have admitted the findings of fact and conclusions of law in the final hearing report." Supreme Court Rule 228(h)(2)(E) (2021 Kan. S. Ct. R. 283).

As a result, we consider the panel's factual findings admitted. Supreme Court Rule 228(g)(1), (2) (2021 Kan. S. Ct. R. 281). The evidence before the hearing panel clearly showed the charged misconduct violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.5 (fees), KRPC 1.15 (safekeeping property), KRPC 3.2 (expediting litigation), KRPC 8.1 (cooperation), KRPC 8.4 (professional misconduct), former Supreme Court Rule 207 (2020 Kan. S. Ct. R. 246) (cooperation), and former Supreme Court Rule 211 (2020 Kan. S. Ct. R. 254) (answer).

We next consider the only remaining issue, the proper discipline for the respondent's violations. The hearing panel unanimously recommended that we indefinitely suspend the respondent's license to practice law. Before us, the Disciplinary Administrator's office renewed its recommendation that we disbar the respondent.

The respondent's mitigating evidence presents a picture of multiple personal tragedies in a brief time. That said, the violations reveal underlying issues existing before and after those tragic circumstances. Respondent's disciplinary history relating to his 2012 diversion case informs us his failure to keep time records spans many years. And respondent admits he relied on his father and brother to handle the firm's trust accounting. Even if such reliance could excuse an attorney from such a basic ethical requirement, which it does not, it does not excuse his failure to keep time records detailing the fees earned from the clients' fee deposits. And the pattern of these four cases shows he took no steps to fill his knowledge gap after the deaths of his father and brother, and instead routinely deposited unearned attorney fees into his operating account and pocketed cash payments without depositing them into any account. These aggravating circumstances far outweigh the mitigating circumstances he presents.

The serious nature of respondent's misconduct calls for serious discipline. His pattern of commingling his funds with his clients' funds in the four cases before us, each involving a vulnerable client, is very troubling. So, too, is his failure to cooperate with the disciplinary proceedings in all four cases. The panel found that respondent intentionally did not comply with the rules and orders of the disciplinary panel and engaged in bad-faith obstruction of the disciplinary proceeding. He also tried to disrupt the disciplinary investigation by asking one client to write to the Disciplinary Administrator's office and suggest the complaint be dropped because it had been a misunderstanding and that respondent was "making it right" by handling another case for the client. Finally, the cases reveal a pattern of repeatedly requesting continuances to

wear down the prosecutor and the prosecution's witnesses, thus impeding the administration of justice.

Respondent's request for probation does not fit the seriousness of his offenses. And, as the panel aptly noted, although respondent presented a plan of probation, it was neither substantial nor detailed, nor did respondent make any effort to put the probation plan into effect before the formal hearing. Moreover, probation does not lend itself to preventing the misconduct, especially bad faith obstruction of the disciplinary process, respondent committed. Nor is probation in the best interests of the legal profession and the citizens of the State of Kansas.

After carefully considering the evidence presented, as well as the ABA Standards for Imposing Lawyer Sanctions, we adopt the panel's findings and conclusions and indefinitely suspend respondent under Supreme Court Rule 225(a)(2) (2021 Kan. S. Ct. R. 275). Respondent must comply with Supreme Court Rule 232 (2021 Kan. S. Ct. R. 287) if he later seeks reinstatement.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that David P. Leon is hereby disciplined by indefinite suspension under Rule 225(a)(2) for violating KRPC 1.1, 1.3, 1.5, 1.15, 3.2, 8.1, 8.4, and former Rules 207 and 211.

IT IS FURTHER ORDERED that respondent must comply with Supreme Court Rule 231 (2021 Kan. S. Ct. R. 286) (notice to clients, opposing counsel, and courts of record following suspension).

27

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.